UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
VINCENT DANIELS,                                :

                Plaintiff,              :        <u>OPINION AND ORDER</u>

        -v.-                          :
                                       21 Civ. 712 (GWG)
KILOLO KIJAKAZI,[1] ACTING        :
COMMISSIONER OF SOCIAL SECURITY,

                         :
              Defendant.
--------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Vincent Daniels brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for Disability Insurance Benefits under the Social Security Act ("the Act"). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[2] For the reasons set forth below, Daniels' motion is granted, and the Commissioner's cross-motion is denied.

I. <u>BACKGROUND</u>

    A. <u>Procedural History</u>

---

[1]  Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as defendant.

[2]  <u>See</u> Plaintiff's Motion for Judgment on the Pleadings, filed Oct. 22, 2021 (Docket # 19) ("Pl. Mot."); Plaintiff's Memorandum of Law in Support of Motion for Judgment on the Pleadings, annexed as Ex. 1 to Pl. Mot. ("Pl. Mem."); Defendant's Cross-Motion for Judgment on the Pleadings, filed Dec. 21, 2021 (Docket # 22); Defendant's Memorandum of Law in Support of Cross-Motion, filed Dec. 21, 2021 (Docket # 23) ("Def. Mem."); Plaintiff's Memorandum of Law in Opposition to Defendant's Cross-Motion, filed Jan. 7, 2022 (Docket # 24); Defendant's Amended Reply Memorandum of Law in Support of Cross-Motion, filed Jan. 11, 2022 (Docket # 26).

On May 4, 2018, Daniels filed an application for disability insurance benefits, alleging disability beginning on August 8, 2014.  See SSA Administrative Record, filed July 23, 2021 (Docket # 13) ("R."), at 146.  Daniels' application was denied on June 14, 2018, see R. 80-91, after which Daniels requested a hearing before an administrative law judge ("ALJ"), see R. 92-93.  A hearing was held on October 22, 2019.  See R. 31-33.  In a written decision dated March 26, 2020, the ALJ found that Daniels was not disabled and denied Daniels' claim.  See R. 10-21.  Daniels requested a review by the Appeals Council, see R. 145-46, which was denied on December 2, 2020, see R. 1-4.  On January 28, 2021, Daniels filed this action seeking review of the ALJ's decision.  See Complaint, filed Jan. 28, 2021 (Docket # 1).

B.  The Hearing Before the ALJ

The hearing was held in New York, New York.  See R. 33.  Daniels appeared in person with his representative Peter Tufo.  See id.  Two experts appeared via telephone: Melissa Fass-Karlin appeared as a Vocational Expert ("VE"), see R. 33, 54-55, 60-64, and Dr. Ashok Jilhewar appeared to offer expert medical opinion testimony, see R. 33, 49-54.

Daniels was 51 years old at the time of the hearing.  See R. 55.  Daniels graduated from college and at the time of the hearing worked as a part-time lacrosse coach.  See R. 37.  Daniels testified that he is married and lives in an apartment.  See R. 34, 41.  Daniels worked as an investor relations consultant from 2005 to 2010 and worked as a full-time lacrosse coach from 2010 to 2014.  See R. 57-61.

In or around 2014, Daniels was hit with a football while drinking a beverage and suffered a chipped tooth and cut lip.  See R. 41.  Daniels had a root canal, which increased his pain, then had the tooth extracted, which intensified his pain further.  See R. 42.  Daniels was eventually diagnosed with type 2 trigeminal neuralgia, see R. 43, which he was advised could not be fixed

with surgery, <u>see</u> R. 46.  Daniels testified that the pain associated with his trigeminal neuralgia would often be a 2 or 3 out of 10 in the mornings, but that activities such as talking, eating, and moving would exacerbate his pain over the course of the day, and it would progress to an 8 or 9 out of 10.  <u>See</u> R. 44.  While he conceded that he is able to get through the physical aspects of a day's work, Daniels testified that there was a "snowball" effect if he works more than one day in a row or if he does a significant amount of talking.  R. 47-48.

Following Daniels' testimony, the ALJ questioned Dr. Jilhewar.  <u>See</u> R. 49.  Dr. Jilhewar testified that Daniels' only serious medically determinable impairment was chronic pain syndrome.  <u>See</u> R. 50-51.  Dr. Jilhewar stated that Daniels had tried using Lyrica and Percocet for his pain but was now only using medical marijuana and the anti-anxiety medication buspirone.  <u>See</u> R. 51-52.  Dr. Jilhewar testified that he did not believe Daniels satisfied Listing 11.14 Part B within the Social Security Administration ("SSA") regulations, facial neuropathy, because of a lack of documentation.[3]  <u>See</u> R. 52.  Dr. Jilhewar stated that Daniels was limited to "light physical capacity" as he had "no other abnormal clinic findings" other than the chronic pain in his mouth, except that Daniels had the non-exertional limitation that "he cannot do . . . work such as talking on a telephone or work which requires lengthy speaking."  <u>See</u> R. 52-53.  In response to questioning from Daniels' counsel, Dr. Jilhewar stated that Daniels' symptoms were more consistent with post-traumatic chronic pain syndrome rather than trigeminal neuralgia.  <u>See</u> R. 53-54.

The ALJ inquired of the VE about the employability of an individual with Daniels' vocational profile who was "[l]imited to occupations with no more than occasional verbal

---

[3]  The hearing transcript reads: "But because there's the lack of documentation of (INAUDIBLE) to do, I think (INAUDIBLE)."  R. 52.  Accordingly, it is somewhat unclear what basis Dr. Jilhewar had for finding that Daniels did not meet this listing.

communication," "limited to low stress jobs," "can understand, remember, and carry out simple and detailed instructions but not complex instructions," can have "no more than occasional changes in the work setting," is "limited to occasional brief and superficial contact with the public," "occasional interaction with coworkers," and "frequent interaction with supervisors," and who averages one unscheduled absence per month and requires 2-3 minute breaks every hour.  See R. 61-62.

The VE testified that such a person could not perform Daniels' past relevant work but could perform the light work occupations of a cleaner, routing clerk, and laundry worker.  See R. 62-63.  The individual would be unemployable, however, if he had more than one unscheduled absence per month or spent more than 5% of his time off task.  See R. 63.

C.   The Medical Evidence

Both Daniels and the Commissioner have provided detailed summaries of the medical evidence.  See Pl. Mem. at 6-9; Def. Mem. at 4-12.  The Court directed the parties to specify any objections they had to the opposing party's summary of the record.  See Scheduling Order, filed Sept. 24, 2021 (Docket # 18), ¶ 5.  The Commissioner has set forth a series of objections to Daniels' summary of the medical evidence, including that Daniels' brief improperly divides the record between evidence supporting and evidence opposing a finding of disability.  See Def. Mem. at 2-4.  The Court agrees with the Commissioner that Daniels' summary contains some "argumentative characterizations" of the record, and we give no weight to this extraneous commentary.  With that exception, we adopt Daniels' summary of the medical evidence in the record, as supplemented and contextualized by the Commissioner's summary, as accurate and complete for purposes of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D.   The ALJ's Decision

The ALJ denied Daniels' application on March 26, 2020.  <u>See</u> R. 21.  In doing so, the ALJ concluded that Daniels has not been under a disability within the meaning of the Act from August 8, 2014, through March 26, 2020, the date of the decision.  R. 20.

Following the five-step test set forth in SSA regulations, the ALJ found that Daniels met the insured status requirements through December 31, 2023.  <u>See</u> R. 12.  The ALJ found that Daniels had engaged in substantial gainful activity since August 8, 2014; specifically, working part-time as a lacrosse coach.  <u>Id.</u>  However, because Daniels' earnings were above the threshold for substantial gainful activity for only two quarters, the ALJ concluded that Daniels "cannot be denied at Step 1, as there are only very sporadic earnings above substantial gainful activity."  <u>Id.</u>  At step two, the ALJ found that Daniels "has the following severe impairments: trigeminal neuralgia; chronic atypical facial pain syndrome; adjustment disorder with depressed mood."  R. 13.

At step three, the ALJ found that Daniels "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1" during the relevant period.  <u>Id.</u>  The ALJ specifically considered listings 11.14 ("Peripheral neuropathy") and 12.04 ("Depressive, Bipolar, and Related Disorders").  R. 13-14; <u>see also</u> 20 C.F.R. Part 404, Subpart P, App'x 1.

Before moving to step four, the ALJ assessed Daniels' residual functional capacity ("RFC") for the relevant period.  R. 14.  The ALJ determined that Daniels' testimony "concerning the intensity, persistence[,] and limiting effects of his symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  R. 15.  The ALJ concluded that Daniels had the RFC to perform

> less than the full range of light work, as defined in 20 [C.F.R. §] 404.1567(b).
> Specifically, he can lift or carry up to 20 pounds occasionally and 10 pounds frequently;

and can sit[], stand or walk up to six hours each in an 8-hour workday, with regularly
scheduled breaks.  However, he is limited to no more than occasional verbal
communication.  He is limited to low stress work, defined as being able to understand,
remember, and carry out simple and detailed instructions, but not complex instructions;
as well as limited to positions with no more than occasional changes in the work setting.
The claimant would average one unscheduled absence per month.  Moreover, he is
limited to occasional brief and superficial contact with the public; no more than
occasional interaction with co-workers; and frequent interaction with supervisors.
Finally, he would require breaks every 60 minutes, lasting for 2-3 minutes, in addition to
regularly scheduled breaks.

R. 14.

The ALJ's decision summarized the opinions and medical records of Drs. Jilhewar,

Tuchman, Brisman, Gao, Tanenbaum, Santarpia, Aguiar, Mizrahi, and Saeed.  See R. 15-19.

The ALJ then separately listed his evaluations of each opinion.  See R. 18-19.

At step four, the ALJ concluded that Daniels was "unable to perform any past relevant

work," during the relevant time period.  R. 19.  Finally, at step five, considering Daniels' "age,

education, work experience, and residual functional capacity" for light work, the ALJ found

"there [were] jobs that existed in significant numbers in the national economy that [Daniels]

c[ould have] perform[ed]."  Id.  Accordingly, the ALJ determined that "[a] finding of 'not

disabled' [was] appropriate."  R. 20.

II.  GOVERNING STANDARDS OF LAW

A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015)

(per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even

where the administrative record may also adequately support contrary findings on particular

issues, the ALJ's factual findings must be given conclusive effect so long as they are supported

by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam)

(punctuation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the

Commissioner's final decision, that decision must be upheld, even if substantial evidence

supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454

(S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

       Importantly, it is not a reviewing court's function "to determine de novo whether [a

claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted);

accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial

evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It

means — and means only — such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)

(punctuation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. The

Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts,

[a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."

Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in

original) (punctuation omitted). "The role of the reviewing court is therefore quite limited and

substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d

at 454 (punctuation omitted).

      B. Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (citations omitted) (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly

limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c),

416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be

found disabled regardless of his or her age, education, or work experience.  See id.

§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  Fourth, if the claimant's

impairment is not listed and is not equal to one of the listed impairments, the Commissioner must

review the claimant's RFC to determine if the claimant is able to do work he or she has done in

the past, i.e., "past relevant work."  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant

is able to do such work, he or she is not disabled.  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if

the claimant's RFC, in addition to his or her age, education, and work experience, permits the

claimant to do other work.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot

perform other work, he or she will be deemed disabled.  Id. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  The claimant bears the burden of proof on all steps except the final one — that

is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d

303, 306 (2d Cir. 2009) (per curiam).

III.  DISCUSSION

      Daniels raises four arguments in his challenge to the ALJ's decision.  First, Daniels

argues that the ALJ improperly evaluated medical evidence in the record — specifically, the

opinions of Dr. Tanenbaum and Dr. Mizrahi.  See Pl. Mem. at 15-18.  Second, Daniels argues

that the ALJ erroneously rejected Daniels' subjective complaints and testimony as to his pain.

Id. at 18-20.  Third, Daniels contends that the ALJ failed to properly consider the VE's

testimony.  Id. at 20-22.  Finally, Daniels argues that the ALJ's RFC determination is not
supported by substantial evidence.  Id. at 22-24.

    A.  Evaluation of Medical Opinion Evidence in the Record

Daniels argues that the ALJ improperly evaluated the medical evidence in the record by
selectively excerpting aspects of the medical evidence to depict Daniels as not being disabled.
Id. at 16.  Daniels also argues that the ALJ provided insufficient reasons for rejecting the
opinions of Dr. Mizrahi and Dr. Tanenbaum.  Id. at 17-18.

In evaluating a medical opinion, whether from a treating source or otherwise, an ALJ
must apply the factors set forth in 20 C.F.R. § 404.1520c(c): supportability, consistency, the
nature of the relationship between the medical source and the claimant, how specialized the
medical source is, and other factors, such as "evidence showing a medical source has familiarity
with the other evidence in the claim or an understanding of our disability program's policies and
evidentiary requirements."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Among these five factors,
the "most important" factors are "supportability" and "consistency."  Id. §§ 404.1520c(b)(2),
416.920c(b)(2).  For supportability, "the more relevant the objective medical evidence and
supporting explanations presented by a medical source are to support his or her medical
opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions
or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).
Thus, supportability is an inquiry geared toward assessing how well a medical source supported
and explained their opinion.  As for consistency, the rules provide that the "more consistent a
medical opinion(s) or prior administrative medical finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)
or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

Thus, "[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them." See Cuevas v. Comm'r of Soc. Sec., 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021). Regulations make clear that an ALJ must explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions" but is not required to explain the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

First, we reject Daniels' argument that the ALJ selectively framed the medical evidence to "paint the picture of a non-disabled individual." Pl. Mem. at 16. Although "[i]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination," Nix v. Astrue, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009), here, the ALJ's decision summarized the relevant medical opinions and acknowledged those that recommended greater limitations than the ALJ ultimately included in Daniels' RFC. See R. 16-17. The ALJ noted that Daniels told physicians that his pain was "constant, depressing, and affecting his ability to work," R. 17, and that his pain "can be spontaneously more acute, impacting his mental focus and concentration," id. The ALJ summarized the findings of psychiatric consultative expert Dr. Santarpia, including her conclusion that Daniels' psychiatric problems, "until better stabilized and treated, may interfere with [his] ability to function on a daily basis." R. 18. The ALJ noted that Daniels informed Dr. Aguiar that his wife performed all of his activities of daily living, id., and that Dr. Mizrahi found Daniels' condition to affect "nearly 100% of all activities of daily living," id. In sum, the ALJ did not selectively frame the medical evidence to ignore opinions and records that suggested Daniels was disabled.

We next consider whether the ALJ adequately evaluated the medical opinion of Daniels'

treating dentist, Dr. Tanenbaum.  Dr. Tanenbaum completed a physical RFC questionnaire that

detailed Daniels' facial pain.  See R. 341-44.  Dr. Tanenbaum opined that Daniels' pain would

"frequently" interfere with his attention and concentration while working.  R. 342.  Dr.

Tanenbaum stated that, because of pain associated with talking, Daniels should be limited to low

stress work.  Id.  Dr. Tanenbaum also estimated that Daniels would be absent from work due to

his pain "[m]ore than four days per month," R. 344, and that he would sometimes need to take

unscheduled breaks during an 8-hour workday, although Dr. Tanenbaum did not estimate the

frequency of such breaks, R. 343.  The ALJ's analysis of Dr. Tanenbaum's opinion, in its

entirety, was:

> Dr. Tanenbaum (6F, 10F) has offered his opinion from his perspective as the claimant's
> treating dentist; however, he is not a neurologist or internist, therefore, his opinion is only
> somewhat persuasive.  Moreover, these opinions are not consistent with the claimant's
> activities, including coaching 1 or 2 lacrosse teams on a part-time basis during the period
> at issue, and all this entails.

R. 19.

Although brief, we conclude that the ALJ's explanation for the weight he accorded Dr.

Tanenbaum's opinion satisfied the requirements of 20 C.F.R. § 404.1520c.  See Chance v.

Comm'r of Soc. Sec., 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019) (the "explanation

need not be exhaustive: it is enough if the Court can 'glean the rationale of an ALJ's decision.'")

(quoting Mongeur, 722 F.2d at 1040).  The ALJ evaluated the consistency of the opinion with

other evidence in the record, concluding that its persuasive value was lessened by its

inconsistency with Daniels' activity as a lacrosse coach.  See R. 19.  Daniels testified that he

missed lacrosse practices approximately once every two weeks, see R. 15, 40, which would

correspond to fewer absences than the "[m]ore than four days per month" estimated by Dr.

Tanenbaum. We conclude that the ALJ discharged his responsibility to explain how he evaluated the consistency of Dr. Tanenbaum's opinion.

We also conclude that, in analyzing Dr. Tanenbaum's opinion in the context of the other objective evidence in the record, the ALJ considered the supportability of Dr. Tanenbaum's conclusion. As noted, supportability is grounded on the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ properly examined the supportability of Dr. Tanenbaum's opinion by noting that the opinion was less "relevant" in light of the fact that he was not a neurologist or an internist. R. 19. This was a reasonable conclusion given that Dr. Tanenbaum's opinion was based on his assessment of Daniels' pain, which Dr. Tanenbaum identified as being neuropathic. See R. 341. The ALJ could properly decide that the evaluation of the effect of neuropathic pain was not supported by a dental examination. Indeed, the ALJ could not have evaluated the "supporting explanations" offered by Dr. Tanenbaum, as his opinion was not supported by reference to objective medical findings. See R. 341-44. Accordingly, it is unclear on what Dr. Tanenbaum based his conclusions. Considering the unexplained nature of Dr. Tanenbaum's opinion and the absence of supporting medical evidence, the ALJ adequately addressed the supportability factor by explaining that the opinion's persuasiveness was diminished by Dr. Tanenbaum's credentials. It is a non sequitur to argue, as Daniels does, that because the neuropathic pain was precipitated by a dental injury, "Dr. Tanenbaum is uniquely qualified to give an opinion on this particular condition." Pl. Mem. at 18.

Furthermore, the ALJ found Dr. Tanenbaum's opinion somewhat persuasive, and the RFC included Dr. Tanenbaum's recommendation that Daniels be limited to low stress work.  <u>See</u> R. 14.  The RFC also included limitations on how frequently Daniels could speak with others, <u>see id.</u>, consistent with Dr. Tanenbaum's finding that talking was a trigger for Daniels' pain, <u>see</u> R. 342.  Finally, the ALJ agreed with Dr. Tanenbaum that Daniels would require regular unscheduled breaks as a result of his symptoms.  <u>See</u> R. 14, 343.  In short, the only significant departure from Dr. Tanenbaum's opinion was the ALJ's rejection of the finding that Daniels would be absent more than four times per month, a deviation which the ALJ explained by reference to Daniels' work as a lacrosse coach.  <u>See</u> R. 15, 19.  Because the ALJ provided good reasons not to endorse Dr. Tanenbaum's findings, there was no error in the ALJ's evaluation of Dr. Tanenbaum's opinion.  <u>See</u> <u>Thomas v. Comm'r of Soc. Sec. Admin.</u>, 479 F. Supp. 3d 66, 86 (S.D.N.Y. 2020) ("to the extent the evidence is susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld." (punctuation omitted)).

We next consider whether the ALJ committed error in his evaluation of the opinion of Dr. Mizrahi, an internist who had seen Daniels regularly for several years.  <u>See</u> R. 599.  Dr. Mizrahi's opinion states that Daniels experiences daily flareups of his trigeminal neuralgia pain, precipitated by stress, noise, chewing, and talking.  R. 599-600.  Dr. Mizrahi opined that Daniels' pain affects nearly 100% of his activities of daily living, that Daniels would need to take unscheduled breaks "all day," and that Daniels would be absent from work for 3 to 4 days per week as a result of his pain.  R. 600-01.  The ALJ summarized Dr. Mizrahi's opinion and stated "I find Dr. Mizrahi's (26F) medical source statement unpersuasive, as it is inconsistent with the claimant's DLAs (work activity) over the last few years."  R. 19.

We conclude that the ALJ failed to adequately explain his reasons for giving no weight to Dr. Mizrahi's opinion because there is no explanation that satisfies the "supportability" prong of 20 C.F.R. § 404.1520c.  See Brianne S. v. Comm'r of Soc. Sec., 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding where "the ALJ did not examine what Doctors McGovern and Beaver used to support their opinions and reach their ultimate conclusions." (punctuation omitted)); Cuevas, 2021 WL 363682, at *5 ("Because the ALJ failed to address the supportability factor . . . the ALJ committed legal error by failing to apply the proper legal standards in the form of the post-March 26, 2017 SSA regulations.").  The regulations mandate that the ALJ "will explain" how the ALJ "considered the supportability and consistency factors for a medical source's medical opinions" in the ALJ's decision.  20 C.F.R. § 404.1520c(b)(2).  Thus, the decision must give such an explanation.

B.  ALJ's Rejection of Daniels' Testimony

Daniels argues that the ALJ failed to provide adequate reasons for declining to credit his testimony regarding the pain he experienced and the limitations associated with that pain.  See Pl. Mem. at 18.

"An ALJ must apply a two-step process to evaluate a claimant's subjective description of his or her impairment and related symptoms."  Vicari v. Colvin, 2016 WL 11482254, at *19 (S.D.N.Y. June 22, 2016) (citing 20 C.F.R. §§ 404.1529, 416.929), adopted, 2016 WL 5660391 (S.D.N.Y. Sept. 30, 2016).  "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[] that could reasonably be expected to produce' the pain alleged."  Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(1)).  "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain

contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Id. (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)); accord Taylor v. Barnhart, 83 F. App'x 347, 350 (2d Cir. 2003) (summary order); see also Meadors, 370 F. App'x at 183-84 (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii); Taylor, 83 F. App'x at 350-51). "When an ALJ rejects testimony as not credible, the ALJ's reasoning must 'be set forth with sufficient specificity to permit intelligible plenary review of the record.'" Agapito v. Colvin, 2014 WL 774689, at *3 (S.D.N.Y. Feb. 20, 2014) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)); accord Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).

While the Second Circuit has held that "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings," Taylor, 83 F. App'x at 350 (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)), in such circumstances, the "ALJ is nonetheless empowered to exercise discretion to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant," id. (punctuation omitted).

The ALJ briefly reviewed the above framework and summarized Daniels' hearing testimony regarding his part-time work as a lacrosse coach. See R. 15. The ALJ's attempt to satisfy this two-step framework consisted of the following statement:

> After careful consideration of the evidence, I find that the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Id.

Looking elsewhere in the decision, as directed by the ALJ, we note that the ALJ did not explicitly address step one: whether Daniels had a "medically determinable impairment that could reasonably be expected to produce [his] symptoms," as required by 20 C.F.R.

§ 404.1529(b).  Failure to comply with 20 C.F.R. § 404.1529, however, does not require remand

where it can be determined from the ALJ's decision on which step a claimant's testimony was

found not to be credible.  See Brian C. v. Comm'r of Soc. Sec., 2021 WL 1946503, at *4

(N.D.N.Y. May 14, 2021) (although ALJ did not expressly state which step led him to find the

plaintiff not credible, no error was present where it was "clear from the face of the ALJ's

decision that his decision was . . . based upon the second step of the credibility determination");

accord Amy T. v. Comm'r of Soc. Sec., 2021 WL 6063057, at *6 (N.D.N.Y. Dec. 22, 2021).

We can infer that the ALJ found that Daniels did have an impairment that could reasonably be

expected to produce the pain alleged given that the medically determinable impairment that the

ALJ recognized — chronic atypical facial pain syndrome, see R. 13, 15-16 — could reasonably

be expected to produce Daniels' chronic facial pain.

But the ALJ did not provide a sufficient explanation for the ALJ's conclusion at the

second step: the determination that Daniels' self-reported symptoms were inconsistent with

medical evidence and other evidence in the record.  Although the ALJ stated that this was based

on "the reasons explained in this decision," R. 15, the remainder of the ALJ's decision included a

neutral summary of the various medical opinions in the record followed by only the briefest

analysis of each opinion.  See R. 15-19.  While the Commissioner has done a thorough job of

explaining why an adverse credibility determination is supported by certain evidence in the

record, see Def. Mem. at 17-19, this analysis was not conducted by the ALJ and in this instance

we do not feel it appropriate for the Court to make assumptions about the ALJ's reasoning given

the paucity of analysis of the evidence conducted by the ALJ.  See Toomey v. Saul, 2020 WL

2537291, at *6 (W.D.N.Y. May 19, 2020) (remanding where the ALJ "never explained how the

evidence she summarized supported her conclusory assertions that [the claimant's] allegations

were not credible"); Banks v. Astrue, 2009 WL 2482140, at *4 (S.D.N.Y. Aug. 13, 2009)

(remanding where ALJ's credibility determination was explained only with reference to "the

evidence of record as a whole which instead supports a greater ability to function"); Brandon v.

Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) ("[T]he ALJ merely stated, with regard to

plaintiff's testimony as a whole, that 'claimant's allegations of experiencing pain are not

consistent with a preponderance of the evidence and are not credible.'  The Court cannot discern

from this conclusory statement whether the ALJ's determination is based on substantial

evidence." (internal citation omitted)).  Ideally, "[w]hen an ALJ determines that a claimant's

own statements regarding her symptoms are not supported by the record, that 'decision must

contain specific reasons for the weight given to the individual's symptoms, be consistent with

and supported by the evidence, and be clearly articulated so the individual and any subsequent

reviewer can assess how the adjudicator evaluated the individual's symptoms.'" Dixon v.

Berryhill, 2017 WL 3172849, at *15 (S.D.N.Y. July 26, 2017) (quoting SSR 16-3p, 2016 WL

1119029, at *9 (Mar. 16, 2016)).  Accordingly, on remand, a proper analysis should be

conducted of Daniels' credibility as required by 20 C.F.R. § 404.1529.

    C.  Evaluation of VE's Testimony

       Daniels argues that the ALJ's RFC determination was inconsistent with the VE's

testimony.  See Pl. Mem. at 20-21.  Specifically, Daniels maintains that the ALJ's finding that

Daniels would be off task 2-3 minutes per hour and would require one unscheduled absence per

month should have precluded all available work, and that the ALJ's failure to reach this

conclusion was based on a misinterpretation of the VE's testimony.[4]  Id. at 21.

---

[4]  Under the same point heading, Daniels challenges the ALJ's determination that he
would not require more than one unscheduled absence per month.  See Pl. Mem. at 21-22.
However, because this is a challenge to the RFC that is entirely unrelated to the VE's testimony,

At the hearing, the ALJ asked the VE whether there were jobs available in the national economy for an individual who, among other restrictions, "would average one unscheduled absence per month" and "in addition to regularly scheduled breaks, . . . would require breaks every hour for two to three minutes."  R. 62.  The VE then identified several jobs that such an individual could perform.  R. 62-63.  The ALJ then asked the VE "how many unscheduled absences would employers customarily allow from their employees per month?" and "what percentage off task would employers customarily permit their employees per work day above the regular three breaks?"  R. 63.  The VE responded that one unscheduled absence per month and "anything (INAUDIBLE) up to and including 5 percent" off task would be customary.  Id.  The ALJ then sought confirmation of this understanding, saying "[s]o, more than one absence and more than 5 percent off task, that would eliminate the jobs you cited and competitive work in a competitive workplace?"  Id.  The VE confirmed that it would.  Id.

In Daniels' view, the VE testified that an employer would allow a total limit of 5% off task behavior, with both unscheduled absences and time off task counting towards that limit.  See Pl. Mem. at 22 ("the [RFC] determination actually includes absenteeism and off task behavior that, when considered together, would place the plaintiff of[f] task in excess of 5% of the work time (1 day per month plus 3-5 minutes per hour)").  We disagree.  First, the ALJ's hypothetical to the VE included the distinct limitations that the hypothetical worker would average one unscheduled absence and, separately, 2-3 minute breaks every hour.  R. 62.  Indeed, the conditions were not even mentioned in immediate succession, but were separated by other restrictions.  See id.  Second, any ambiguity as to the VE's testimony on this fact was laid to rest

---

Daniels' challenge to the sufficiency of the evidence supporting the RFC is addressed separately, below.

when the ALJ sought and received confirmation that "more than one absence <u>and</u> more than 5 percent off task, that would eliminate the jobs you cited." R. 63 (emphasis added). The use of the word "and" rather than "or" clarifies that these were separate limitations that a hypothetical employer would have separate tolerance for, not that each were potential inputs into a single cumulative measure. Additionally, we note that unscheduled absences and time off task are regularly treated as distinct limitations, and that one unscheduled absence per month and five percent time off-task have not precluded employment in the cases reviewed by this Court. <u>See, e.g.</u>, <u>Santana v. Saul</u>, 2019 WL 6119011, at *4 (S.D.N.Y. Nov. 18, 2019) (jobs were available for claimant who would average one unscheduled absence per month and 5% time off task); <u>Del Carmen Fernandez v. Berryhill</u>, 2019 WL 667743, at *3 (S.D.N.Y. Feb. 19, 2019) (same).

In sum, Daniels' argument as to the ALJ's interpretation of the VE's testimony is without merit.

D.  <u>Support for the ALJ's RFC Determination</u>

Daniels argues that the ALJ's RFC determination was not supported by substantial evidence. <u>See</u> Pl. Mem. at 22. Because we conclude that remand is required to obtain a proper evaluation of Daniels' credibility and the opinion of Dr. Mizrahi, and because such evaluation may cause the ALJ to revisit the RFC determination, it would be premature to evaluate the sufficiency of the evidence supporting the ALJ's RFC. <u>See Merriman v. Comm'r of Soc. Sec.</u>, 2015 WL 5472934, at *24 (S.D.N.Y. Sept. 17, 2015) ("[B]ecause I find legal error that warrants remand, I do not address whether the ALJ's opinion was supported by substantial evidence. These errors render the record incomplete and the Court unable to evaluate the final agency determination." (punctuation omitted)).

E.  <u>Appropriate Remedy</u>

Daniels has argued that, if Court finds legal error in the ALJ's decision, we should remand only for the calculation of benefits.  See Pl. Mem. at 25.  "Such a remedy is appropriate where there is no apparent basis to conclude that a more complete record might support the Commissioner's decision."  Sczepanski v. Saul, 946 F.3d 152, 161 (2d Cir. 2020) (punctuation omitted).  Here, the ALJ's failure to properly explain the basis for aspects of his decision does not establish that the ALJ's conclusion — that Daniels was not disabled within the meaning of the Act — was without any apparent basis.  Accordingly, we remand to the Commissioner for a decision that addresses the shortcomings identified in this opinion.

IV.   CONCLUSION

For the foregoing reasons, Daniels' motion for judgment on the pleadings (Docket # 19) is granted, and the Commissioner's cross-motion for judgment on the pleadings (Docket # 22) is denied.  The case is remanded for further proceedings consistent with this opinion.  The Clerk is requested to enter judgment.

SO ORDERED.

Dated: July 26, 2022
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge